IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**NEVADA CAPITAL INSURANCE COMPANY**, a Nevada Corporation,

       Plaintiff,

v.

**SEGO CONTRACTORS INC,** an Oregon corporation; **MICHAEL SEGOVIANO** aka MIGUEL SEGOVIANO, an individual; **KAROMA PROPERTIES, LLC,** an Oregon limited-liability company; **SERVICE EXPRESS GROUP OREGON, INC.,** an Oregon Corporation; **SEGOVIANO LEASING INC.,** an Oregon Corporation; **SEGO REAL ESTATE GROUP, LLC,** an Oregon limited-liability Company; and **"H.D.",** an individual identified by a pseudonym,

       Defendants.

Case No. 6:19-cv-00612-MC

OPINION AND ORDER

MCSHANE, Judge:

       Plaintiff Nevada Capital Insurance Company moves for summary judgement against Sego Contractors, Inc., Michael Segoviano, Karoma Properties, LLC, Service Express Group Oregon, Inc., Segoviano Leasing, Inc., Sego Real Estate Group, LLC, (collectively, the "Sego Defendants") and an individual identified as H.D. Plaintiff argues it has no duty to defend or indemnify any Sego Defendant in the underlying lawsuit. As discussed below, the Court agrees.

1 – OPINION AND ORDER

## BACKGROUND

H.D. is the plaintiff in the underlying action against Sego Defendants. In it, H.D. accuses Michael Segoviano of unlawful sexual contact with her beginning when H.D. was 13 and continuing until she was 20. Lether Decl. Ex. 1, ¶¶ 10, 12, 17. She also brings claims of False Imprisonment, Invasion of Privacy, Negligent Infliction of Emotional Distress, and Premises Liability against the corporate Defendants. During the relevant time period, Plaintiff issued Commercial General Liability policies to Sego Contractors.

## STANDARDS

Rule 56 governs the motion for summary judgement. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## DISCUSSION

Coverage A of the policy covers "bodily injury" and "property damages" only if caused by an "occurrence." McCredie Decl. Ex. 3, 38, ECF No. 18-2. An occurrence is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." McCredie Decl. Ex. 3, 51. In Oregon, an "accident" is defined as "an incident or occurrence that happened by chance, without design and contrary to intention and expectation." *St. Paul Fire & Marine Ins. Co., Inc v. McCormick & Baxter Creosoting Co*, 324 Or. 184, 206 (1996). By definition then, Coverage A applies only to occurrences that were not intentionally caused. As the Court noted in denying defendants' motion to stay, the Oregon crime of sexual abuse of a minor is one of injurious intent. Opinion and Order, 4-5, ECF No. 27 (quoting *Mut. of Enumclaw v. Merrill*, 102 Or. App. 408, 411–12 (1990).

Defendants argue that even if there is no duty to defend, there may be a duty to indemnify. The duty to indemnify applies even when there is no duty to defend. Ledford v. Gutoski, 319 Or. 397, 403 (1994). Instead of looking to the complaint, the duty to indemnify relies on the "facts proved at trial on which liability is established." *Id.* at 399–400. Defendants argue that because there has not been "substantive litigation in the Underlying Lawsuit, there can be no determination of whether NCIC's duty to indemnify has been triggered," and the Court must deny the Motion for Summary Judgment. Def's Opposition to Summ. J. 12, ECF No. 30. While there has been no substantive litigation in the Underlying Lawsuit, the Court previously concluded all claims in the underlying lawsuit are derivative of the allegations of sexual abuse of a minor, an intentional act. Opinion and Order, 7. As the Court noted in the earlier Opinion, resolution of the question regarding plaintiff's duty to indemnify is not premature based on the allegations in the underlying action:

> The question is not merely whether there is an underlying tort action, rather "whether resolving the duty to indemnify might require the court to make factual determinations that are contested in the underlying liability action." [*Charter Oak Fire Ins. Co. v. Interstate Mech., Inc.*, 958 F. Supp. 2d 1188, 1215 (D. Or. 2013).]
>
> Even though this matter involves an unresolved tort action in the Underlying Lawsuit, the Court is not bound to stay the proceeding. As identified in *Charter Oak*, the issue to determine here is whether any factual determinations yet made in the Underlying Lawsuit must be made by this Court to resolve the indemnification at issue. As noted above, Plaintiff NCIC owes no duty to indemnify, as a matter of law, for any liability based on a claim where "an injurious intent is necessarily inferred from this type of intentional misconduct." [*Mut. of Enumclaw v. Merrill*, 102 Or. App. 408, 412 (1990)]. As in *Merill*, given the nature of the alleged sexual abuse, defendants here are precluded from arguing they merely acted negligently in harming H.D. No relevant facts need be developed and all claims made by H.D. in the Underlying Lawsuit are derivative of the sexual abuse allegation. Because no facts need to be developed to determine that there is no duty to indemnify, this claim is not premature.

Opinion and Order, 6-7.

Defendants' argument that H.D.'s negligence-based claims against the corporate defendants permit an inference that those defendants did not act intentionally ignores the allegations in the original complaint filed in the underlying action. That complaint alleges Segoviano "engaged in an ongoing and continuous pattern and practice of sexual contacts . . . and sexual intercourse with [H.D.]" McCredie Decl. Ex. 1, ¶ 14. Additionally, "The sexual harassment of Plaintiff was a continuing, ongoing, uninterrupted series of events that began at Plaintiff's age 13, and ended in September 2018. Further, *all sexual contact and harassment* that occurred before Plaintiff's age 18 was *knowingly allowed, permitted and encouraged by all defendants*." *Id.* at ¶ 18 (emphasis added).[1]

Defendants argue that even if there is no coverage under Coverage A of the policy, there is coverage for the claims of False Imprisonment and Invasion of Privacy under Coverage B of the policy. The amended complaint in the underlying action alleges:

> Defendant Corporations and each of them falsely imprisoned Plaintiff by, without lawful justification or consent, compelling her to accompany Defendant Segoviano on long and short business trips both in and around Central Oregon, and out of state, and by compelling her to spend time with Segoviano at his office, and at various other job sites.
>
> \* \* \* \*
>
> Defendant Corporations, and each of them, invaded Plaintiff's privacy and right to seclusion by: a. persuading her to enter into a close physical relationship with Segoviano; and b. persuading her to become Segoviano's companion.

Lether Decl. Ex. 2, ¶¶ 24, 26.

---

[1] Defendants provide no support for their argument that the Court must ignore the original complaint filed in the underlying action and focus instead solely on the first amended complaint. Generally, allegations in a complaint are judicial admissions. *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). And the allegations at issue—i.e., that the defendants all knew of and encouraged the sexual abuse, that H.D. was an employee of the corporations, and that Segoviano committed the abuse while acting within the course and scope of his employment as the principal owner and CEO of the defendants—were not inadvertent or peripheral allegations. In fact, these allegations formed the basis for H.D.'s claims against the Sego Defendants. An insurer must be permitted to rely on the allegations in a complaint when determining whether it owes a duty to defend or indemnify an insured. Likewise, a Court considering those same issues may look to the allegations supporting the claims against the insured.

Coverage B provides coverage for damages arising out of "personal and advertising injury." McCredie Decl. Ex. 3, 42. "'Personal and advertising injury' means injury, including consequential 'bodily injury', arising out of one or more of the following offenses: a. False arrest, detention or imprisonment; . . . e. Oral or written publication, in any manner, of material that violates a person's right of privacy[.]" McCredie Decl. Ex. 3, 51. Unlike Coverage A, Coverage B does not apply only to "occurrences" or "accidents." Coverage B does, however, contain an exclusion stating:

> This insurance does not apply to: a. Knowing Violation Of Rights Of Another "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

McCredie Decl. Ex. 3, 43.

As noted, the First Amended Complaint alleges that the Corporate Defendants[2] "a. persuad[ed H.D.] to enter into a close physical relationship with Segoviano; and b. persuad[ed H.D.] to become Segoviano's companion." Lether Decl. Ex. 1, 8 ¶26. This relationship consisted of "an ongoing and continuous pattern and practice of sexual contacts with [H.D.] and sexual intercourse with [H.D.]." McCredie Decl. Ex. 3, 5 ¶ 12. Because the Oregon crime of sexual abuse of a minor infers an injurious intent, it follows that the exclusion for injuries "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'" applies here.

Finally, Coverage A and Coverage B contain the following "EMPLOYMENT-RELATED PRACTICES EXCLUSION:"

> This insurance does not apply to:
>
> "Bodily injury" [or "Personal and advertising injury"] to:

---

[2] Defendants acknowledge that Michael Segoviano is not an insured and the only issue here is whether certain actions or inactions of thee corporate defendants are covered.

5 – OPINION AND ORDER

> (1) A person arising out of any:
>
>> a. Refusal to employ that person;
>>
>> b. Termination of that person's employment; or
>>
>> c. Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person[.]

McCredie Decl. Ex. 3, 58. "This exclusion applies: (1) Whether the insured may be liable as an employer or in any other capacity[.]" *Id.*

The original complaint in the underlying action alleges:

> 9.
>
> Beginning in or about 2011, when Plaintiff was age 13, Defendant Segoviano employed Plaintiff to work for each of Defendant's corporations as an office worker, office manager, administrative assistant, bookkepper, rent collector, errand runner, and manager of landlord-tenant relations. This employment relationship continued unabated until September 2018. Defendant Segoviano at all times material while working as CEO of the Corporate Defendants worked closely with Plaintiff and was Plaintiff's boss and supervisor.
>
> * * * *
>
> 11.
>
> Beginning when Plaintiff was age 13, and continuing until Plaintiff was age 20, Defendant Corporations and Defendant Segoviano created a hostile work environment for Plaintiff as follows: engaging in a pattern and practice of unlawful and unwelcome sexual and non-sexual touching, making sexual jokes, sending sexually suggestive text messages, making sexually suggestive telephone calls, seeking for sexual favors, making sexual comments about Plaintiff, and staring at Plaintiff's body. This hostile work environment was severe and pervasive and substantially impacted the terms and conditions of employment.
>
> 12.
>
> Beginning when Plaintiff was age 13, and in a continuing course of conduct that lasted until Plaintiff was age 20, Defendant Corporations and Defendant Segoviano engaged in a quid pro quo arrangement with Plaintiff in which Plaintiff was threatened with changes in the terms and conditions of her employment, including but not limited to unemployment and loss of employment-related benefits, unless she submitted to sexual favors.

Lether Decl. Ex. 1.

H.D. originally brought "Unlawful employment discrimination" claims against the corporate Defendants. The claims were each based on "The acts of sexual harassment alleged in Paragraphs 9-12 . . . ." Lether Decl. Ex. 1. As the policy excludes any "injury arising out of any . . . employment-related practices . . . such as coercion . . . [or] harassment," Plaintiff has no duty to defend or indemnify Defendants.

## CONCLUSION

Plaintiff's Motion for Summary Judgement, ECF No. 16, is GRANTED.[3]

IT IS SO ORDERED

DATED this 4th day of March, 2020.

    /s/ Michael McShane
Michael McShane
United States District Judge

---

[3] The Court denies Defendants' motion to certify the following question to the Oregon Supreme Court: Whether under Oregon law, when a third party sues a corporate entity for negligence based upon the acts or omissions of an employee, shareholder, officer, director or member who allegedly intended to injure the third party, the lawsuit alleges an "occurrence" against the corporate entity under its commercial general liability policy. ECF No. 36. As noted above, even assuming Defendants prevailed on this argument, the policy excludes any "injury arising out of any . . . employment-related practices such as coercion . . . [or] harassment." As the alleged corporate conduct clearly arose out of the excluded employment-related practices, and as the exclusion applies to Coverage A and Coverage B, the claims at issue are excluded from coverage, regardless of whether the actions constitute an "occurrence" under the policy.

7 – OPINION AND ORDER